## Case No. 9,944.

### The MURIEL.

### WILLIAMS v. SHALLCROSS.

[7 Wkly. Notes Cas. 147.]

District Court, E. D. Pennsylvania. Nov. 14, 1877.

AFFREIGHTMENT—PERIL OF THE SEA—FREIGHT—PARTIAL LOSS OF CARGO—BURDEN OF PROOF—"OUTPUT."

1. A claim for freight on a part of a cargo, ruined by sea water so as to lose its character entirely, not sustained: the libellant failing to show the quantity so ruined.

2. Quaere as to the liability of a consignee in such a case, where the quantity is ascertainable.

(1) Libel by Shallcross, owner and consignee of a cargo of potatoes, against the brig Muriel, for loss of a part of the cargo by wetting by sea water. (2) Libel by Williams, master, against the cargo, for freight. In December, 1876, Hyndman shipped a cargo of potatoes upon the brig, to be carried to Philadelphia, freight at the rate of twenty cents per Winchester bushel, payable on the "output" by consignee. The master signed bills of lading by their terms exempting the ship from liability for loss arising from "perils of the sea," and receipting for 8,390 bushels, "more or less." Upon arrival, the master delivered to Shallcross, who had purchased the bill of lading, 6,937 bushels in good condition, but the balance had become utterly destroyed by the action of sea water, and was a mere mass of mash. The consignee refused to receive this part or to pay freight therefor. The master then shovelled the mash overboard, without any measurement of its quantity, and sued for his freight. The suit for damage, being the first of the above actions, was first heard, and involved principally questions of fact in respect to storage.

Mr. Roney, for libellant in first case, and for respondent in second.

Mr. Flanders, for respondent in first case, and for libellant in second.

THE COURT (CADWALADER, District Judge). We have here a perishable cargo, with a voyage of extraordinary duration, and weather, which, however described by the witnesses, appears by the log to have been at a certain period tempestuous. The preponderating tendency of the proofs is that the cause of the damage suffered was wetting by water. The occurrences of the voyage suffice to explain this. The master of the vessel is therefore not liable to the merchant unless by reason of bad stowage. The question as to stowage is two fold: First. Was there proper and sufficient dunnage? On this point I do not think that the case of the libellant is made out on the law and the facts. Secondly. Is the proof of the grounding and shipping of water in the East river sufficient to show that the cargo therefore taken in was wetted so that it was improper to complete the lading without reference to that occurrence? On this point, if the decision depended on the examination in chief of the steward, the decree should, I think, be for the libellant. But in the steward's cross-examination, he says that he did not see any shipping of water, and the master and the mate testify that no water was taken in. The case of the libellant is one of great hardship, but the libel must be dismissed with costs.

Decree accordingly.

An appeal was taken, but subsequently discontinued, whereupon the suit for freight proceeded (being the second of the above actions).

Mr. Flanders, for libellant.

The purpose of the shipowner is to be paid for the space occupied, and for the transportation of the cargo. If its condition was un-

sound, that, it has already been decided, was no fault of the ship. And if its condition, whether arising from a peril of the sea, or from its intrinsic nature or character, is such that the quantity cannot be determined at the port of destination, then the criterion is, the quantity taken in at the port of shipment. Upon that quantity the freight is to be paid. Steelman v. Taylor [Case No. 13,-340]; Dakin v. Oxley, 33 Law J. C. P. 115; Garrett v. Melhuish, 4 Jur. (N. S.) 943; Gibson v. Sturge, 10 Exch. 622; Frith v. Barker, 2 Johns. 327; 1 Pars. Shipp. & Adm. 218.

Mr. Roney, for respondent.

The cargo not remaining in specie, and not having been lost by an intrinsic defect, but by a "peril of the sea," the vessel is relieved from liability, but the consignee is relieved in like manner from the payment of the freight.

April 12, 1879. THE COURT (BUTLER, District Judge), after referring to the former case, said, in substance:

We are now called upon to determine whether the respondent is liable for freight on this part of the cargo. He says it was not delivered, was lost on the voyage; that this rotten mass of slush was not in any sense potatoes. If this is true he is not liable. But the libellant denies that it is true. He contends that no part of the cargo was lost in the sense here involved, urging that the change in form and character of the part under consideration, and the consequent deterioration in value, is unimportant; that although the potatoes assumed a different shape, they, nevertheless, continued to be potatoes.

The legal principles involved are familiar and simple, but the novelty of the facts renders their application difficult. There is, however, a preliminary question to dispose of before this point is properly reached. As before stated, the freight was to be paid, at the rate named in the charter party, viz. twenty cents per Winchester bushel, on the "output." This involved a measurement at the port of delivery. The proofs show a measurement of only 6,937 bushels, on which the freight has been paid. The remainder (here involved) was shovelled into the river, without ascertainment of the quantity, neither party treating it as if liable to freight. It was susceptible of measurement—could have been weighed—without difficulty. How are we to ascertain the quantity? The able counsel for the libellant saw this difficulty, and very candidly acknowledged its seriousness on his attention being called to it. He endeavors to surmount it by taking the number of bushels stated in the bill of lading, and deducting therefrom the 6,937 which were measured here. The difference, he argued, represents the quantity that was not measured. To this there are two objections: First, that the bill of lading itself is indefinite. It states the quantity shipped to be 8,390 bushels, "more or less"; and, second, that the freight is to be paid, as we have seen, on the "output," giving to the shipper all advantages from shrinkage and diminution from every cause. If we knew the exact quantity shipped, we could not know or even approximate with certainty the quantity brought here, treating the decayed mass thrown away as potatoes. For, both in bulk and weight, there was serious decrease. Necessarily this must have been so.

The case of Gibson v. Sturge, 10 Exch. 622, is readily distinguished from this. There a quantity of wheat was shipped, to be paid for per bushel, without an exact ascertainment of quantity, but naming a given number of bushels as an approximate amount. Before reaching the port of delivery, it had so swollen from contact with water as to render ascertainment of the exact quantity shipped impossible. From the necessities of the case, the court was compelled to take the approximate amount named, and charge the shipper accordingly. Aside from other differences between that case and the one before us, it is quite sufficient that the necessity which called for and alone could justify what was there done does not exist. The extent of this cargo, as before observed, could readily have been ascertained.

No ascertained amount of "output" being shown beyond that already paid for, we may postpone a consideration of the important question first stated until its decision becomes necessary. The libel must be dismissed.

Decree accordingly, with costs. Oral opinion.